# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MELISSA DAVIS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VERDE ENERGY USA, INC.,<br><br>Defendant. | Case No. 1:19-cv-10741-MLW<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Melissa Davis ("Plaintiff"), by and through her undersigned counsel, on behalf of herself and all other persons similarly situated, brings this First Amended Class Action Complaint against Verde Energy USA, Inc. ("Verde" or "Defendant"), and alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief based upon, *inter alia*, investigations conducted by her attorneys.

## INTRODUCTION

1.      This action is brought as a class action on behalf of Plaintiff and a putative class of Massachusetts consumers seeking redress for the deceptive and bad faith pricing practices of Defendant that have caused at least tens of thousands of consumers to pay considerably more for their electricity than they should otherwise have paid.

2.      Verde, a Competitive Electric Supplier or "CES," has exploited the deregulation of the retail electricity market by luring consumers into switching electricity suppliers using a bait-and-switch scheme designed to deceive reasonable consumers.  Verde lures its customers into switching to its electricity supply services by offering, for a limited period of time, teaser

rates that are initially lower than the local distribution companies' rates and other competing Competitive Electric Suppliers' ("CESs") rates for electricity.  Once the initial rate expires, however, Verde automatically switches its customers over to its Variable Rate.  Verde represents that its Variable Rate each month is based on "market conditions."  A reasonable consumer thus expects that after the teaser rate expires, he or she will pay a Variable Rate that reflects (or varies with) the wholesale cost of electricity and local competitors' rates — the two primary components of any market.

3.      Despite its explicit representations that customers would receive low cost power (including reinforcement of that misrepresentation through its website address, www.lowcostpower.com and Welcome Letters stating, "We look forward to providing you with 100% renewable energy at a very competitive rate…"), the rates Verde charges its customers are not low cost, but are instead substantially higher than the rates of its competitors (i.e., the local distribution companies and CESs); the rates are invariably higher than Verde's own initial teaser rates; and the rates are wholly disconnected from wholesale electricity market pricing.  In short, nothing indicates that Verde's Variable Rates rise and fall with any discernable indicator of "market conditions."

4.      Indeed, as set forth below, Verde routinely charges its consumers up to almost *three times* the underlying market rate, notwithstanding Verde's representations that the customer will receive electricity from Verde at a Variable Rate, and that its Variable Rates "fluctuate" monthly with market conditions.  Specifically, even when the market price goes down, Verde's rates do not decrease, but instead remain at an extraordinarily high premium rate for electricity *regardless* of fluctuations in the underlying market price.

5.     Verde makes additional representations that it offers "low-cost," "competitive" electric rates, and "cost effective" power.  But what Verde does not inform customers is that its Variable Rate is virtually always substantially higher than, and not competitive with, other rates available in the market and is significantly higher than Verde's own Fixed Rates.

6.     Verde's unfair and deceptive scheme of charging inflated electric prices that match *increases* in the underlying market price while failing to pass along corresponding *decreases* is intentionally designed to maximize revenue for Verde.  Consumers, such as Plaintiff and the Class, were deceived into believing that Verde would provide market-based rates when, in reality, Verde sets its prices at significantly above-market rates and Verde's competitors' rates.

7.     No reasonable consumer would interpret or understand Verde's pricing representations as granting Verde unfettered discretion to raise its Variable Rate as high as it pleases in order to maximize profits, such that the Variable Rate bears no resemblance to electricity market pricing.  Further, no reasonable consumer would knowingly agree to pay higher power rates than what were previously being paid without additional services or enhancements, which are not provided by Verde.  Indeed, any contrary interpretation would render the contract's variable rate pricing terms meaningless.

8.     As a result of Verde's unfair and deceptive overcharging scheme, Massachusetts consumers are being fleeced millions of dollars in exorbitant charges for electricity.

9.     Plaintiff, on behalf of the class she seeks to represent, brings this lawsuit based on Verde's unlawful and unconscionable consumer practices under the Massachusetts Consumer Protection Act, Chapter 93A *et seq*., as well as Verde's breach of contract and breach of the implied covenant of good faith and fair dealing, and alternatively, for unjust enrichment.

Through its deceptive and unconscionable practices, upon information and belief, Verde bilked the class of tens of thousands of current and former customers with Variable Rate electricity plans out of millions of dollars.  Accordingly, this lawsuit seeks, *inter alia*, injunctive relief, actual damages and refunds, treble damages, punitive damages, attorneys' fees, and the costs of this suit.

## PARTIES

8.      Plaintiff Melissa Davis is a resident and citizen of Lowell, Massachusetts.

9.      Defendant Verde Energy USA, Inc. is a corporation organized under the laws of the State of Delaware whose principal place of business is located at 101 Merit Seven Corporate Park, Norwalk, CT 06851.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction of the claims asserted herein pursuant to 28 U.S.C. § 1332(d)(2)(A) in that the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which members of the putative plaintiff class (the "Class Members" or "Class") are citizens of States different from Defendant.

11.      This Court has general personal jurisdiction over Defendant.  Defendant does business in Massachusetts through continuous, permanent, and substantial activity in Massachusetts.

12.      This Court has specific personal jurisdiction over Defendant because it maintains sufficient contacts in this jurisdiction, including the advertising, marketing, distribution and sale of electricity to Massachusetts consumers.

13.    Venue is proper pursuant to 15 U.S.C. § 80b-14 and 28 U.S.C. § 1391. Defendant regularly transacts and solicits business in this District, and Plaintiff resides in this District.

## **FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

### A.    **Energy Deregulation and the Role of Competitive Electric Suppliers**

14.    In the late 1990s and early 2000s, many states moved to deregulate parts of the electricity supply services performed by large public utilities.  Delivery of electricity to a consumer requires both the creation of electricity and the transmission of that electricity from the power plant to the consumer.  The typical pattern was to require the public utilities to divest their power generation assets such as coal, gas and nuclear power plants.  However, the regulated utilities continued distributing power from these power plants to consumers through transmission lines.

15.    When deregulation occurred, the business of power *supply* was opened to competition and consumers were allowed to select the companies from whom they would purchase their power.  However, states generally set a "standard offer" (also sometimes called a "default rate") available to all customers in each public utility's service area. Massachusetts has both a fixed rate standard offer and a variable rate standard offer.  The fixed rate remains constant, whereas the variable rate fluctuates each month based upon certain factors.

16.    As a result of the deregulation of power supply, several different parties are now involved in the supply of electric power to residential consumers.  Certain companies, such as Dominion, produce electric power ("Generation Companies").  Other companies, such as National Grid in Massachusetts, distribute electricity from Generation Companies to end users ("Distribution Companies").  Although some Generation Companies have sold

power directly to consumers, including residential customers, most sell the power on the wholesale market to companies that market to retail customers.  These companies are called Competitive Electric Suppliers ("CESs").  Defendant, Verde, is one such CES.

17.    In deregulation states, like Massachusetts, CESs may compete to supply the energy services, but the local distribution companies continue to deliver power through their wires regardless of which company supplies them.  In addition, the local distribution company may continue to supply metering, billing, and related administrative services to the consumer, regardless of who supplies the energy services.   Thus, the distribution company continues to generate and send periodic bills directly to the consumer for the energy it supplies, even after a consumer has enrolled in or "switched" to a CES.  The fact that the energy services for which the customer is being billed are now being provided by a CES is noted on the bill, often in very fine print that is easily overlooked.  The bill otherwise looks substantially the same as it did before the switch.

18.    The theory behind deregulation was that competition would result in CESs being more aggressive than the utilities in reducing wholesale purchasing costs and thereby lower retail residential rates – saving customers money on their energy bills.

19.    The market for wholesale power in New England is administered by an independent, not-for-profit corporation formed in accordance with the recommendations of the Federal Energy Regulatory Commission, called ISO New England (for "Independent System Operator").   ISO New England coordinates and directs the generation and flow of electricity throughout the region, ensuring that electric supply exactly meets demand throughout the network.  The wholesale market managed by ISO New England determines whether and when electricity will be made by Generation Companies and the wholesale

prices that will be paid for that electricity through competitive bids. "More than 500 companies participate in these markets, buying and selling between $6-$14 billion of electric power and related products annually."[1] The bid process determines the Generation Company that will make each unit of electricity and the wholesale price each CES will pay to each Generator for each unit of energy delivered to specific locations throughout the region.

20.     CESs, like Verde, play a middleman role: they purchase power directly or indirectly from Generation Companies and sell that electricity to end-user consumers. However, CESs do not *deliver* that electricity to consumers.  Rather, Generation Companies deliver the electricity to Distribution Companies, which in turn deliver the electricity to the ultimate consumer.  CESs merely buy electricity at the wholesale rate, then sell that power to end-users with a mark-up.  Thus, CESs are essentially brokers and traders.  They neither make nor deliver electricity, but merely buy electricity from the Generation Companies and re-sell it to end users.

21.     Like other CESs, Verde purchases power on the wholesale market and sells it to consumers.  The New England power grid receives power from a variety of power plants and transmits that power throughout New England as needed.  Verde buys and resells power purchased from the New England regional electricity market.

22.     Verde's prices do not have to be—and are not in fact—approved by states' regulatory authorities such as the Massachusetts Department of Public Utilities.  Rather, Verde and other CESs are free to set their own rates for supplying electricity to consumers so long as they do not violate consumer protection laws, breach contractual promises, and abide by the regulations created by the Attorney General that specifically address the marketing

---

[1] *See* https://www.iso-ne.com/about/what-we-do/three-roles/administering-markets (last viewed July 15, 2019).

practices of CES companies – 940 CMR 19.00, *et seq*.: Retail Marketing and Sale of Electricity.

23.     And Verde, like all other suppliers, relies upon the Distribution Companies to deliver the electricity it purchases on the wholesale market to its customers.     The Distribution Companies charge separately for their services, using rates that must be reviewed and approved by the states' regulatory agencies.

24.     CESs may contract with consumers to supply electricity on either a "Fixed" or "Variable" rate basis.  Under a Fixed contract, the Supplier agrees to supply electricity at a set rate for a certain number of months.

25.     Under a Variable Rate contract, the Supplier may vary the rate it charges on a periodic basis (often monthly), in accordance with the regulations created by the Attorney General – 940 CMR 19.00, *et. seq*. and in accordance with the terms of the contract.

26.     Verde offers various Fixed and Variable rate plans, including contracts that charge a low promotional "teaser" rate which is fixed for a set number of months before automatically rolling into a Variable Rate plan.

**B.     The Failure of Energy Deregulation and Resulting Harm to Consumers**

27.     Almost all states that deregulated their energy markets did so in the mid- to late-1990s.  This wave of deregulation was frantically pushed by then-corporate behemoth Enron.  For example, in December 1996 when energy deregulation was being considered in Connecticut, "the most aggressive proponent" of deregulation, Enron CEO Jeffrey Skilling said:

> Every day we delay [deregulation], we're costing consumers a lot of money . . . .
> It can be done quickly.  The key is to get the legislation done fast.[2]

---

[2] Christopher Keating, Eight Years Later . . . "Deregulation Failed" HARTFORD COURANT, Jan. 21, 2007.

28.     Changing the industry under this sense of urgency and with inadequate protections against abuse has resulted in consumers in the states that deregulated suffering serious harm.  For example, by 2001, forty-two states started the deregulation process or were considering deregulation.  Today, the number of full or partially deregulated states has dwindled to only seventeen and the District of Columbia.  Even within those states, several have recognized deregulation's potential harm to everyday consumers and now only allow large-scale consumers to shop for their energy supplier.

29.     Responding to shocking energy prices often paid by ordinary consumers, many key players that supported deregulation now regret the role they played.  For example, reflecting on Maryland's failed deregulation experience, a Maryland Senator commented: "Deregulation has failed.  We are not going to give up on re-regulation till it is done."[3]

30.     A Connecticut leader who participated in that state's foray into energy deregulation was similarly regretful:

> Probably six out of the 187 legislators understood it at the time, because it is so incredibly complex . . . .  If somebody says, no, we didn't screw up, then I don't know what world we are living in.  We did.[4]

31.     Verde has been the subject of an investigation into the company's deceptive practices.  According to the Columbus [Ohio] Dispatch, in the last few months Ohio regulators, upon recommendation of Public Utilities Commission of Ohio ("PUCO"), have initiated an investigation against Verde's deceptive billing, misleading and deceptive practices, and enrollment disputes in Ohio.  According to the article, "Between [October 1, 2018] and April 12,

---

[3] David Hill, State Legislators Say Utility Deregulation Has Failed in its Goals, THE WASHINGTON TIMES, May 4, 2011.

[4] Keating, supra note 2.

[2018] the PUCO said it received 231 complaints related to enrollment disputes, misleading information and instances of false representations where Verde claimed to be another utility."[5]

32.     As a result of the PUCO investigation, Verde has suspended all marketing and enrollments in Ohio.[6]

33.     Similarly, Massachusetts Attorney General, Maura Healey has expressed serious concerns about the improper practices of Competitive Electric Suppliers, like Verde, who operate in the Commonwealth of Massachusetts.

34.     In March 2018, Attorney General Healey issued a report calling for an end to the competitive electricity supply market for individual residential customers in Massachusetts.[7] According to the report, "Massachusetts electric customers who switched to a competitive electric supplier paid $176.8 million more than if they had stayed with their utility company during the two-year period from July 2015 to June 2017."[8]

35.     Healey implicitly recognized the false promises made by competitive electric suppliers like Verde: "Competitive electric suppliers promise big energy savings but are actually burdening customers with hundreds of dollars in extra costs."[9]

---

[5] *See* https://www.dispatch.com/business/20190417/puco-launches-investigations-against-palmco-and-verde-energy-over-sales-tactics, last viewed July 15, 2019.
[6] Energy Choice Matters, Retail Supplier Voluntarily Suspends Marketing, Enrollments In State Pending Investigation Settlement Discussions, http://www.energychoicematters.com/stories/20190508yd.html, last viewed July 15, 2019.
[7] *See* Press Release, Office of Attorney General Maura Healey, AG Healey Calls for Shut Down of Individual Residential Competitive Supply Industry to Protect Electric Customers (March 29, 2018), https://www.mass.gov/news/ag-healey-calls-for-shut-down-of-individual-residential-competitive-supply-industry-to-protect.
[8] *See* Report, Massachusetts Attorney General's Office Commonwealth of Massachusetts, An Analysis of the Individual Residential Electric Supply Market in Massachusetts (March 2018), https://www.mass.gov/files/documents/2018/03/29/Comp%20Supply%20Report%20Final%20032918.pdf, at viii.
[9] *See* Press Release, https://www.mass.gov/news/ag-healey-calls-for-shut-down-of-individual-residential-competitive-supply-industry-to-protect.

36.      Energy deregulation in Massachusetts has been an abject failure.  As discussed in the report, "Massachusetts consumers in the competitive supply market paid **$176.8 million more than they would have paid if they had received electric supply from their electric company during the two-year period from July 2015 to June 2017.**"[10] (emphasis in the original). Moreover, the total net consumer loss from participation in the Individual Residential Electric Supply Market compared to the Electric Company's Basic Service was $65.4 million dollars from July 2015 to June 2016.  From July 2016 to June 2017, the total net consumer loss increased to $111.4 million dollars, which leads to a $176.8 million-dollar total net loss in two years."[11]

37.      Concluding that energy deregulation has resulted in considerable consumer harm in Massachusetts, Attorney General Healey "strongly" recommended that the legislature put an end to it:

> I find that the individual residential market for electric supply causes significant net harm to Massachusetts consumers, and I strongly recommend that the Legislature end the individual residential market for electric supply.[12]

38.      When Massachusetts deregulated back in 1997, it did so with the goals of "promot[ing] the prosperity and general welfare of its citizens . . . by restructuring the electricity industry in the commonwealth to foster competition and promote reduced electricity rates" (*see* Ch. 164 of the Acts of 1997, Sec. 1.).  Unfortunately, those goals have not been achieved.  This class action seeks to recover for Massachusetts residents the amounts above and beyond reasonable market rates that Verde deceived Plaintiff and the Class into paying.

---

[10] Report,
https://www.mass.gov/files/documents/2018/03/29/Comp%20Supply%20Report%20Final%20032918.pdf at viii.
[11] Id. at Appendix 5A, p. 1.
[12] Id. at 40.

C.      **Plaintiff's Experience with Verde's Excessive Rates**

39.     Verde engages in a classic bait and switch pricing scheme.   Verde lures consumers into switching to its electricity supply service by offering teaser rates that are much lower than its regular rates, while leading consumers to believe that the subsequent rates will be less than those offered by their Distribution Company and other CESs in the market.

40.     Plaintiff's experience with Verde is typical.  In June 2015, Plaintiff was solicited by Verde by telephone to switch her electricity service from her Distribution Company, National Grid, with the promises of a lower rate compared to National Grid and promises that she would save money on her electricity bills if she switched.  Based on these promises, Plaintiff made the switch shortly thereafter.

41.     Plaintiff received a Welcome Letter in the mail from Verde, dated June 16, 2015, in which Verde represented that "We look forward to providing you with 100% renewable energy *at a very competitive rate* . . ." (Emphasis added).  The Letter further refers Plaintiff to Verde's website, lowcostpower.com.  Plaintiff's Welcome Letter is attached hereto as **Exhibit A**.

42.     Based on Verde's promises, Plaintiff and other reasonable consumers understand that Verde's variable rates ("Variable Rate") are "very competitive" with other rates in the market.

43.     Furthermore, Plaintiff was provided with a solicitation in the form of a standard "Terms of Service," (the "Agreement") attached hereto as **Exhibit B**.  Verde's Agreement makes this express link between its Variable Rate and the underlying wholesale market rate set by ISO New England and charged by Generation Companies, stating the Variable Rate "may fluctuate monthly with market conditions."

44.     Accordingly, a reasonable consumer would understand that Verde's Variable Rates would be reasonably related to and fluctuate in a manner correlated with the underlying wholesale market rate.  In other words, a reasonable consumer would infer a direct link between the two rates. In other words, a reasonable consumer would infer that as the wholesale market rate falls, so will Verde's Variable Rate for retail customers.  Indeed, there would be no conceivable reason for a consumer to sign up for Verde's energy plan if she did not believe she would receive a better overall deal on her electricity, based on its competitive advantage in obtaining prices in the energy marketplace.

45.     Instead, and contrary to reasonable consumer expectations and the terms of Verde's Agreement, Verde used its Variable Rates as a pure profit center, increasing the rates charged to Plaintiff and class members when wholesale prices rose, but staying at a level almost *three times* the wholesale market rates when the wholesale prices fell.

46.     In addition to its Welcome Letter, Verde's Terms of Service twice refers to its website:  www.lowcostpower.com (*See* **Exhibit B**).

47.     Reading these statements along with the website name, Plaintiff and other consumers reasonably concluded that Verde was offering them "low cost power" at low Variable Rates relative to other prices offered in the market.

48.     The home page of the website contains numerous representations, separate and apart from Verde's Terms of Service or any contract with Plaintiff, including representations that Verde provides "competitive pricing" and "competitive electricity rates."  As such, Plaintiff and a reasonable consumer would understand that Verde provides its customers with "low cost power" and "competitive" rates for electricity.

49.     A screenshot of the home page of Verde's website, www.lowcostpower.com, is shown below.  These representations reinforce Verde's promise to provide competitive, low-cost rates to Plaintiff and all Verde customers.



50.     Thus, Verde misleadingly states that its rates are competitive with rates otherwise available in the market by representing that its rates are "competitive" on its website.

51.     The Agreement provided Ms. Davis with a three-day rescissionary period during which she could rescind the Agreement prior to its commencement should she not agree to its terms.  Specifically, the Agreement states that, "Verde will not initiate service to Customer prior to midnight on the third day following Customer's receipt of this Agreement, during which period Customer shall have the right to rescind, without charge or penalty, his or her affirmative choice of Verde."  *See* Exhibit B, § 3.  Thus, during that rescissionary period, the Agreement

served as a solicitation in which Defendant identified the basis upon which the promised variable rate would be determined.

52.    Based on Verde's representations, Plaintiff decided to switch to Verde for electricity in June 2015.  Plaintiff was initially placed on Verde's fixed, teaser rate plan for six months.  She paid 9.9 cents per kWh during this period.

53.    After the six-month teaser period ended, Plaintiff's account was automatically rolled over to Verde's Variable Rate plan.  Plaintiff began paying Verde's Variable Rate in December 2015.  However, rather than providing low-cost, competitive electric rates that were tied to wholesale market conditions, Verde charged Plaintiff exorbitant monthly rates that were far higher than competitors' rates and did not vary with wholesale market conditions.

54.    As it is difficult for consumers to determine and compare the rates being charged by Verde versus other CESs or the local utility companies given that the data is not readily discernable, Plaintiff and other consumers continued to pay exorbitant rates for many months or years after switching to Verde.

55.    Plaintiff overpaid for electricity based on Verde's unfair and deceptive acts and practices.  She would not have enrolled in Verde's plan but for its false representations.  Had Plaintiff known that Verde's rates would be significantly and consistently higher than the wholesale market rate, that the rates would not decrease in line with market rates, or that Verde would not provide her with a competitive, low cost electric rate, she would not have made the decision to switch from National Grid and enroll in Verde's plan.

56.    Plaintiff paid Verde's Variable Rate until approximately January 2017, after which, upon discovering that Verde was charging exorbitant rates as compared to National Grid, she ended her Verde service and returned to National Grid.  The chart below sets forth (1) the

average wholesale price (in cents per kilowatt hour) of electricity delivered to Massachusetts for each month during the period from January 2016 through January 2017, the time during which Plaintiff was enrolled in Verde's Variable Rate plan, as reported by ISO-New England; (2) the non-promotional Variable Rates Verde charged Plaintiff for those same months as represented by Verde; and (3) the resulting percentage premium that Verde charged consumers compared to the wholesale rate on a per-month basis.  The chart demonstrates that Verde did not provide Plaintiff with (a) low-cost power; (b) a competitive rate – both, or (c) a rate which decreased in line with market rates—all of which it promised to Plaintiff and other consumers.

| Billing Period[13] | Average Wholesale Price[14] | Verde Price | Verde Premium ABOVE Wholesale Price |
|---|---|---|---|
| Service End Date | $/kWh | $/kWh | % |
| 1/6/2016 | $0.0829 | $0.179901 | 117% |
| 2/4/2016 | $0.0676 | $0.189898 | 181% |
| 3/7/2016 | $0.0513 | $0.169902 | 231% |
| 4/6/2016 | $0.0647 | $0.159903 | 147% |
| 5/5/2016 | $0.0523 | $0.139898 | 168% |
| 6/6/2016 | $0.0549 | $0.129897 | 137% |
| 7/7/2016 | $0.0699 | $0.119907 | 72% |
| 8/5/2016 | $0.0775 | $0.129894 | 68% |
| 9/6/2016 | $0.0654 | $0.134901 | 106% |
| 10/6/2016 | $0.0538 | $0.144906 | 169% |
| 11/3/2016 | $0.0589 | $0.154897 | 163% |
| 12/6/2016 | $0.1085 | $0.164899 | 52% |
| 1/5/2017 | $0.0973 | $0.164902 | 69% |

57.     There was, accordingly, a huge disparity between the wholesale rates Verde paid for power and the Variable rates that it charged its customers, including Plaintiff and Class Members.

---

[13] The first day of the period is approximately thirty days before.

[14] The Average Wholesale Price is compromised of the ISO-NE Total (which includes the ISO-NE WCMA LMP plus other wholesale charges) and includes the cost of renewable energy credits in order for Verde to provide a 100% renewable rate.  Plaintiff is a resident of Lowell, MA, which falls in the Western Central MA (WCMA) Zone.  *See* https://www.iso-ne.com/about/key-stats/maps-and-diagrams/.

58.     Accordingly, Verde routinely charges Plaintiff and Class Members a Variable Rate for electricity that is as much as ***three times higher*** than the underlying market rate.

59.     For example, as shown in the chart above, just looking at the first two months during which Plaintiff was on the Variable Rate, in January 2016, the average wholesale price was $0.0829 per kilowatt hour but Verde charged $0.179901 per kilowatt hour, a premium of 117% on top of the wholesale price.  The following month, February 2016, the wholesale rate dropped to $0.0676 per kWh, but Verde's rate *rose* to $0.189898, resulting in a price that was 181% on top of the wholesale price—which is surprisingly close to three times the wholesale rate.

60.     Moreover, Verde's costs, other than its wholesale cost of power, were relatively fixed and could not have justified the massive increases alleged above.  For example, charges as ancillary and capacity charges and other regulatory costs did not fluctuate to any material extent and, in particular, did not fluctuate to a material extent in relation to wholesale power prices (these additional costs are included in the "average wholesale rate" in the chart shown in paragraph 56 above).  Verde's other material costs were for operations, and included costs, for example, relating to rent, equipment, overhead, employees, etc. were also relatively fixed and could not justify the price variations alleged above.

61.     Also, the cost that Verde pays for renewable energy certificates to provide "100% renewable" or "green" energy are fixed and insignificant in terms of the overall costs Verde incurs to provide retail electricity.  Therefore, these other cost factors cannot explain the drastic increases in Verde's Variable Rate or the reason its rates are completely disconnected from variation in wholesale costs.  In fact, the average wholesale rate listed above, includes

Verde's costs for renewable energy certificates. Even after adding in these costs, Verde's Variable Rates are still priced at an excessive premium well above the market rate.

62.     Verde's representation to consumers concerning its Variable pricing plan — that the Variable Rate is market-based — is patently false. Although Verde *increases* its Variable Rate in response to *rising* wholesale prices, Verde fails to *decrease* its prices in response to a *falling* wholesale market price. Oftentimes, Verde's rate rises even when the wholesale market rate decreases, and Verde's rate consistently remains significantly higher than the local competitors and the wholesale market rate. For example, the average wholesale price dropped from $0.0775 in August 2016 to $0.0654 in September 2016 to $0.0538 in October 2016. However, during the same time period, Verde's rate increased from $0.129894 to $0.134901 to $0.144906, landing at a premium of *169%* on top of the wholesale price.

63.     Notably, Verde charges these exorbitant premiums without adding any value to the consumer whatsoever. As detailed above, Verde neither produces nor transports electricity. It has no role in running or maintaining power plants or power lines; it does not perform hookups or emergency responses. Indeed, Verde does not even handle customer billing: that, too, is handled by the Distribution Company. Essentially, all that Verde does is act as a trader in the transaction. Yet it charges multiple times the amount that the Generation Companies receive for making electricity and that the Distribution Companies receive for transmitting power, maintaining power lines, handling emergency services, and customer billing and calls.

64.     The following chart compares Verde's rates to National Grid's rates, which is Plaintiff's Distribution Company. The chart demonstrates that Verde did not provide Plaintiff

with either low cost power or a competitive rate—both of which it promised to Plaintiff and other consumers.

| Billing Period[15] | Verde Rate | National Grid Rate[16] | Difference ABOVE National Grid Rate |
|---|---|---|---|
| Service End Date | $/kWh | $/kWh | % |
| 1/6/2016 | $0.179901 | $0.16647 | 8% |
| 2/4/2016 | $0.189898 | $0.16604 | 14% |
| 3/7/2016 | $0.169902 | $0.13497 | 26% |
| 4/6/2016 | $0.159903 | $0.11799 | 36% |
| 5/5/2016 | $0.139898 | $0.09073 | 54% |
| 6/6/2016 | $0.129897 | $0.09601 | 35% |
| 7/7/2016 | $0.119907 | $0.10145 | 18% |
| 8/5/2016 | $0.129894 | $0.09655 | 35% |
| 9/6/2016 | $0.134901 | $0.09152 | 47% |
| 10/6/2016 | $0.144906 | $0.09466 | 53% |
| 11/3/2016 | $0.154897 | $0.09400 | 65% |
| 12/6/2016 | $0.164899 | $0.10684 | 54% |
| 1/5/2017 | $0.164902 | $0.13043 | 26% |

65.     Based on the chart above, from July 2016 to September 2016, National Grid's rate decreased from $0.10145 to $0.09655 to $0.09152, whereas Verde's rate *rose* from $0.119907 to $0.129894 to $0.134901 in those same months, resulting in a 47% overcharge.

66.     As set forth above, Verde breached its customer contracts as its consumers do not receive a price based on market conditions.  Instead, consumers are charged rates that are substantially higher than those of competitors and untethered to market conditions. Verde intentionally fails to disclose this material fact to its customers because no reasonable

---

[15] The first day of the period is approximately thirty days before.

[16] This is the National Grid Price to Compare, which can be found here: https://www.mass.gov/service-details/basic-service-information-and-rates.  This is the electricity rate that Plaintiff would have paid had she remained with National Grid and not switched over to Verde's electricity plan.  The price was calculated accordingly and includes the $0.0150 cost of renewable energy certificates had National Grid provided a 100% renewable electricity.

consumer—including Plaintiff Melissa Davis—who knows the truth about Verde's exorbitant rates would choose Verde as an electric supplier.

67.    Defendant Verde's statements and omissions regarding its electricity rates are materially misleading, as the most important consideration for any reasonable consumer when choosing an energy supplier is price.  No reasonable consumer, including Plaintiff, who knew the truth about Verde's exorbitant rates would choose Verde as an electric supplier, and no reasonable consumer, including Plaintiff, could be expected to uncover the truth until *after* they have paid Verde's exorbitant rates and had the opportunity to *retroactively* compare them to other rates charged during the same time period and in the same location.

68.    Not surprisingly, Verde's rates are not competitive with those of other CESs either.  *See* **Exhibit C** (2016 Retail Power Marketers Sales – Residential, U.S. Energy Information Administration).  In fact, according to U.S. Energy Information Administration's data, in 2016, Verde's rates were higher than 69% of the 39 CESs providing residential electricity services in Massachusetts.  *See* id.

69.    Verde knowingly and intentionally made these misleading statements regarding its electric rates so that reasonable consumers like Plaintiff would be enticed by its false and misleading statements and switch their Electric Supplier and/or Generation Company to Verde.

70.    Verde's only product is electricity delivered by Distribution Companies and has the exact same qualities as electricity supplied by other CESs or Generation Companies.  There is nothing to differentiate Verde Energy from other CESs, Distribution Companies, or Generation Companies such that would warrant higher rates, and the potential to pay a reduced rate that is based on market conditions is the only reason Plaintiff and any reasonable consumer would enter into a contract for electricity with Verde.

71.     Verde used its Variable Rates as a pure profit center, increasing the rates charged to Plaintiff and class members when wholesale prices rose, but staying at a level as much as ***three times*** the wholesale market rate when the wholesale prices fell.  And Plaintiff's variable rate was consistently higher than her initial rate and often substantially higher than National Grid's and other competing CESs' rates.

72.     Verde's unfair and deceptive acts and practices, and its misstatements and omissions, caused injury to Plaintiff and other reasonable consumers because they believed that by switching to Verde's electricity plan, they were contracting for a competitive, low-cost Variable Rate tied to the wholesale market rate.

73.     Verde breached its consumer contracts as evidenced by Verde's drastic rate disparities with those of the distribution company and the fact that Verde's rates were always higher than National Grid's rates during the time Plaintiff was enrolled in Verde's plan.  Verde does not charge a rate based on market conditions as it states in its solicitations and contracts with consumers, but rather gouges its customers by charging outrageously high rates.

74.     Indeed, Verde's customers are charged Variable Rates that are substantially higher than those of its local competitors, higher than Verde's own initial rate offerings, and uncorrelated to reductions that occur in the wholesale rate – all reasonable and plausible indicators of market conditions – a term which is undefined in Verde's Terms of Service.  Verde intentionally fails to disclose this material fact to its customers because no reasonable consumer, including Plaintiff, who knows the truth about Verde's exorbitant rates would choose Verde as an electricity supplier.

75.     Verde knowingly and intentionally made misleading statements regarding its electric rates so that reasonable consumers like Plaintiff would be induced to switch to Verde's electricity plan.

76.     Verde knows its rates are unconscionably high, and the misrepresentations it makes about its Variable Rates being market-based were made for the sole purpose of inducing consumers to sign up for Verde's electricity supply.  Verde reaps outrageous profits to the direct detriment of Massachusetts consumers without regard to the consequences high utility bills cause such consumers.  As such, Verde acted with actual malice or with wanton and willful disregard for consumers' well-being.

77.     As a direct result of Verde's misrepresentations, Plaintiff and members of the Putative Class overpaid for electricity and therefore suffered common injuries, for which damages can be calculated.

78.     Had Verde charged Plaintiff a rate that was actually based on market conditions, Plaintiff would have been charged a substantially lower rate for his electricity.  Accordingly, she was injured when she paid her inflated bills.

**D.     Plaintiff Suffered Injury Due to Verde's Improper, Unfair and Deceptive Pricing Practices**

79.     Plaintiff Melissa Davis paid Verde's Variable rate from January 2016 through January 2017.  During that time, Verde's rates consistently remain significantly higher than the Distribution Company's rates and uncorrelated with the wholesale market rate.  For example, in January 2016 — the first month Plaintiff paid Verde's Variable Rate upon being switched from Verde's Fixed Rate Plan — she paid a variable rate of 17.99 cents per kwh, ***nearly double*** the average wholesale rate and ***double*** Verde's own fixed rate.  And as demonstrated above,

although Verde *increases* its Variable Rate in response to *rising* wholesale prices, Verde fails to *decrease* its prices in response to a *falling* wholesale market price.

80.    Verde's conduct, as alleged herein, was improper and it portrayed itself as providing Plaintiff and the Class with an opportunity to purchase low, or lower, energy when, in fact, Verde did the opposite: it charged Plaintiff and the Class more than the underlying wholesale market rates for energy.  Verde further engaged in improper practices by claiming it would provide low-cost power and competitive rates that were competitive with the market.  As evidenced above, Verde's rates were neither low-cost nor competitive. Verde's rate was significantly higher than and uncorrelated with the wholesale market rate and significantly higher than National Grid's rates and the rates of other CESs in the market.

81.    Plaintiff paid Verde's exorbitant variable electricity rates and thereby suffered damages.  Verde's conduct as alleged above was a substantial factor in causing Plaintiff's losses, which were a reasonably foreseeable result of that conduct.

82.    Similarly, other members of the Putative Class have routinely paid substantially more for their energy needs since switching to and enrolling in Defendant's electricity plans.

83.    Verde's unfair and deceptive scheme as alleged herein constitutes a continuing violation over the course of each and every time Plaintiff (or any other class member) was overcharged for electricity.   Further, Verde actively concealed its wrongful conduct by maintaining to Plaintiff and other members of the Putative Class, through Verde's marketing, invoicing, and other communications directed to consumers, misrepresenting that the prices Verde charged for electricity were the result of competitive market forces when, in reality, they were the result of Verde's fraud.  Plaintiff and other members of the class could not discover

through reasonable diligence the nature of Verde's wrongful conduct earlier by virtue of Verde's active concealment of its wrongdoing.

## CLASS ACTION ALLEGATIONS

84.     Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the following class of similarly situated persons:

> All persons enrolled in a Verde Energy, Inc., variable rate electric plan in connection with a property located within Massachusetts at any time within the applicable statutes of limitations preceding the filing of this action through and including the date of judgment (the "Class").

85.     Plaintiff reserves the right to modify or amend the definition of the proposed Class or to propose sub-classes as might be necessary or appropriate.

86.     Excluded from the Class are Defendant, including any parent, subsidiary, affiliate or person controlled by Defendant; Defendant's officers, directors, agents or employees; the judicial officers assigned to this litigation; and members of their staffs and immediate families.

87.     The proposed Class and meets all requirements for class certification.  The Class satisfies the numerosity standard.  The Class is believed to number in the tens of thousands of persons.  As a result, joinder of all class members in a single action is impracticable.  On information and belief, class members can be identified by Verde and Distribution Company records.

88.     There are questions of fact and law common to the Class which predominate over any questions affecting only individual members.  The questions of law and fact common to the Class arising from Verde's actions include, without limitation, whether Verde:

> a.      committed unfair or deceptive trade practices by its Variable Rate policies and practices and contract;
>
> b.      breached its contract with regard to its Variable Rate;

    c.    breached its covenant of good faith and fair dealing with regard to its Variable Rate contracts;

    d.    was unjustly enriched through its Variable Rate policies and practices; and

    e.    continues to commit wrongdoing through its Variable Rate policies and practices.

89.    The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity to other available methods for the fair and efficient adjudication of this controversy.

90.    Plaintiff is an adequate representative of the Class because she is a member of the Class and her interests do not conflict with the interests of the members of the class she seeks to represent.  The interests of the members of the Class will be fairly and adequately protected by Plaintiff and her undersigned counsel, who have extensive experience prosecuting complex class action litigation.

91.    Plaintiff's claims are typical of the claims of the Class because they arise out of the same conduct, policies, and practices of Verde with respect to its Variable Rate policies and practices.  Plaintiff has suffered the harm alleged and have no interests antagonistic to the interests of any other putative class member.

92.    Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy.  It would be impracticable and undesirable for each class member who suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

93.     Notice can be provided to Class members by using techniques and forms of notice similar to those customarily used in other class actions.

## CAUSES OF ACTION

### COUNT I

**VIOLATION OF MASSACHUSETTS CONSUMER PROTECTION ACT**
**(MASS. GEN. LAWS CH. 93A)**
**(On Behalf of Plaintiff and the Class)**

94.     Plaintiff repeats and realleges the preceding and subsequent paragraphs as though set forth herein.

95.     Plaintiff brings this Count on behalf of herself and the Class.

96.     Plaintiff asserts a claim under the Massachusetts Consumer Protection Act ("Chapter 93A"), which makes it unlawful to engage in any "[u]nfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws ch. 93A, § 2(a).

97.     Verde is engaged in "trade" and "commerce" as it offers electricity for sale to consumers.  By misrepresenting that its Variable Rates for electricity were competitive market-based rates, Defendant committed unfair methods of competition and unfair and deceptive acts and practices in the conduct of a trade or commerce.

98.     Under Massachusetts law, it is an unfair or deceptive act for a seller to make any material representations of fact in an advertisement if the seller knows or should know that the material representation is false or misleading or has the tendency or capacity to be misleading. 940 C.M.R. § 6.04(1).

99.     By misrepresenting that its Variable Rates for electricity were "very competitive" market-based rates, Verde made material representations of fact that it knew, or should have known, were false and misleading and that had the tendency and capacity to be misleading.

100.    Defendant's misrepresentations and false, deceptive, and misleading statements and omissions with respect to the Variable Rates it charges for electricity, as described above, constitute affirmative misrepresentations in connection with the marketing, advertising, promotion, and sale of electricity in violation of the Chapter 93A.

101.    Defendant's false, deceptive, and misleading statements and omissions would have been material to any potential consumer's decision to purchase electricity from Defendant.

102.    By repeatedly referencing the website www.lowcostpower.com in Verde's Terms of Service, Defendant willfully misrepresented to reasonable consumers that its variable prices for power were "low cost" when in fact they were not.

103.    Verde represents on its website that its rates are "competitive" and "competitively priced" with the rates otherwise available in the market.  Verde further represents that its energy is "low cost."  These representations are false and misleading.

104.    Indeed, Verde's website address and content knowingly misrepresented to consumers that its pricing was a "competitive" option when it was in fact dramatically higher than and uncorrelated with wholesale prices, and higher than the local distribution company prices and all other CESs' prices.

105.    Furthermore, Verde knowingly made misrepresentations of material fact by making bald promises of savings, when in fact, Plaintiff did not save money on her energy bills when she switched over from National Grid to Verde.[17]

---

[17] Massachusetts regulations state, "It is an unfair or deceptive act or practice for a retail seller of electricity, including a distribution company, to make any comparison of any price to any other price

106.     Defendant also failed to inform customers that its Variable Rates for electricity are substantially higher than those based on the market conditions in the electricity market and do not reflect the wholesale cost of purchasing electricity.  That information would have been material to any consumer deciding whether to purchase electricity from Defendant.

107.     Defendant further deceptively and consciously misrepresented the most determinative factors it uses to set variable rates.

108.     Defendant knew at the time it promised prospective customers that they would be charged a variable rate based on market conditions that this promise was false.

109.     Defendant made these false, deceptive, and misleading statements and omissions with the intent that consumers rely upon such statements.

110.     Defendant's intentional concealments were designed to deceive current and prospective Variable Rate customers into believing that rates will be commensurate with market conditions in the Terms of Service.  Defendant benefits from reliance and deprives consumers from informed purchasing decisions and savings.

111.     Verde's conduct as alleged above constitutes a deceptive act or practice.  Verde's Variable electric rate representations as set forth above were and are likely to mislead consumers and Verde intended that consumers rely upon those representations.   Plaintiff and other reasonable consumers reasonably interpreted Defendant's representations to mean that Verde's Variable Rates track the underlying wholesale power rates (when in fact they do not).  Plaintiff and other reasonable consumers reasonably interpreted Defendant's representations to mean that Verde's Variable Rates were competitive (when in fact they were not).  Verde's representations

---

without stating the relevant, material facts upon which that comparison is based, including but not limited to any comparison of the amount of money to be saved, expressed in any manner, by purchasing electricity from one retail seller of electricity rather than any other."  940 CMR § 19.06(3).

were material to a reasonable consumer and likely to affect consumer decisions and conduct, including purchases of power from Verde pursuant to variable rate contracts.

112.     Defendant's affirmative conduct and omissions constitute unlawful practices beyond a mere breach of contract.  Rather, Defendant's practices are unconscionable and outside the norm of reasonable business practices.  No reasonable consumer would enter into an energy contract in which the CES is permitted to charge whatever rates it wants.  Yet, by deceiving consumers, Verde has managed to convince them to enter into exactly this kind of contract.  This is plainly an unconscionable result.

113.     Verde's conduct as alleged above constitutes unfair practices because:

a.      Verde's contracts do not accurately describe the rates the customer will be paying or the circumstances under which the rates may change.[18]

b.      Verde made bald, false promises of savings, when in fact, Plaintiff did not save money on her energy bills when she switched over from National Grid to Verde – a violation of 940 CMR § 19.06(3).

c.      Verde's acts and practices with regard to its exorbitant Variable electric rates as alleged above are immoral, unethical, oppressive and unscrupulous.

d.      Verde's conduct is substantially injurious to consumers.  Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have paid such a high price for electricity but for Defendant's immoral, unethical, oppressive and unscrupulous practices and procedures.  Consumers have thus overpaid for their electricity and such injury is not outweighed by any countervailing benefits to consumers or competition.  No benefit to consumers or competition results from Defendant's conduct, nor could consumers reasonably have avoided the injury.

---

[18] Massachusetts regulations state that "*[i]t is an unfair or deceptive act or practice* for a retail seller of electricity to make any material representation to the public or to any consumer, either directly or through any type of marketing or agreement. . . . which the seller knows or should know has the capacity or tendency to deceive or mislead a reasonable consumer . . . in any material respect, including but not limited to representations relating to . . . (d) *any term of any agreement to be entered into by the retail seller of electricity and a consumer [for] the distribution price, the generation price or the total delivered price of electricity* . . ." 940 CMR § 19.04 (emphasis added).

114.    Verde's conduct as alleged above also constitutes a deceptive act or practice. Verde's Variable electric rate representations as set forth above were and are likely to mislead consumers and Verde intended that consumers rely upon those representations. Plaintiff and other reasonable consumers reasonably interpreted Defendant's representations to mean that Verde's Variable rates track the underlying wholesale power rates (when in fact they do not).   Plaintiff and other reasonable consumers reasonably interpreted Defendant's representations to mean that Verde's Variable rates were competitive (when in fact they were not).   Verde's representations were material to a reasonable consumer and likely to affect consumer decisions and conduct, including purchases of power from Verde pursuant to Variable rate contracts.

115.    As a result of Verde's actions, Plaintiff and Class Members suffered injuries because they purchased Defendant's electricity that they otherwise would not have bought or paid more than they would have paid but for Defendant's actions.

116.    The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiff and the Class to suffer an ascertainable loss and substantial injury when they paid an exorbitant premium for electricity over wholesale market rates.

117.     Chapter 93A § 9 permits any consumer injured by a violation of the MCPA to bring a civil action, including a class action, for damages and injunctive relief.   Massachusetts has a strong interest in applying MCPA to the conduct at issue here.   Plaintiff resides in Massachusetts, and Defendant advertises, markets, and sells Electricity in Massachusetts.

118.    Plaintiff and the members of the Class are entitled to the greater of their actual damages and the statutory amount of $25.

119.     As a result of Verde's unlawful business practices, Plaintiff and the members of the Class are entitled, pursuant to Chapter 93A *et seq.*, to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains.

120.     Verde's violation of Chapter 93A *et seq.* was knowing and willful.  Defendant's failure to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated Chapter 93A.  Therefore, Plaintiff and the members of the Class are entitled to recover not less than twice and not more than three times their actual damages and any applicable statutory penalties.  Plaintiff and the members of the Class are also entitled to attorneys' fees.

121.     Plaintiff made a written demand for relief in satisfaction of Chapter 93A, § 9(3) on April 23, 2019, and Defendant has failed to provide an adequate response.

122.     Plaintiff and the Class are entitled to recover damages and other appropriate relief, as alleged below.

## COUNT II

### BREACH OF CONTRACT
### (On Behalf of Plaintiff and the Class)

123.      Plaintiff repeats and realleges the preceding and subsequent paragraphs as though set forth herein.

124.     Plaintiff brings this Count on behalf of herself and the Class.

125.     Plaintiff and the Class entered into a valid contract with Verde for the provision of electricity (the "Agreement").

126.     Pursuant to the Agreement, Verde agreed to charge a Variable Rate for electricity that "may fluctuate monthly with market conditions."

127.    Pursuant to the Agreement, Plaintiff and the Class paid the Variable Rates charged by Verde for electricity.

128.    However, Verde failed to perform its obligations under the Agreement because it charged Variable Rates for electricity that were not market-based and instead significantly higher than and uncorrelated with the wholesale market rate for Electricity.

129.    Plaintiff and the Class were damaged as a result because they were billed and paid for, electricity rates that were substantially higher than they would have been had Verde provided a market-based Variable Rate.

130.    By reason of the foregoing, Verde is liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus attorneys' fees.

## COUNT III

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (On Behalf of Plaintiff and the Class)

131.    Plaintiff repeats and realleges the preceding and subsequent paragraphs as though set forth herein.

132.    Plaintiff brings this Count on behalf of herself and the Class.

133.    All contracts contain an implied covenant of good faith and fair dealing, including Plaintiff's and Class members' contracts with Verde.  The implied covenant is an independent duty and may be breached even if there is no breach of a contract's express terms. Under this covenant, we are not to suppose that one party is put at the mercy of the other but will read in any necessary conditions to ensure a mutuality of obligation under fair terms.

134.    When a contract contains an indefinite price term – such, as here, Defendant's variable, market-based pricing – the seller does not have unfettered discretion to set the price.

135.    Here, Defendant has failed to satisfy this obligation.  Instead of setting its rates in good faith consistent with the market, Defendant has unilaterally imposed exorbitant, undisclosed rates on its customers, including Plaintiff and the members of the Putative Class.  In actuality, Defendant's rates bear no reasonable relationship to market rates.  While Defendant represents that its Variable Rates may fluctuate monthly according to market conditions, its rates will be low-cost and competitive with the market at large (as represented by the distribution companies – Verde's main competitors – and other CESs), in reality, Verde's rates generally far exceed that market.

136.    Under the covenant of good faith and fair dealing, Verde should have billed customers like Plaintiff at a reasonable, market-based rate as promised.  All monies paid above this reasonable amount should be restored to the class as damages.

137.    Verde breached the implied covenant of good faith and fair dealing by arbitrarily and unreasonably exercising its unilateral rate-setting discretion to price gouge and frustrate Plaintiff and other Putative Class members' reasonable expectations that the Variable Rate for electricity would be commensurate with market conditions.

138.    Verde's performance of its discretionary functions under the Terms of Service, as alleged herein to maximize its revenue from Variable electric rates, impedes the right of Plaintiff and other members of the Putative Class to receive benefits that they reasonably expected to receive under the contract.

139.    Verde acted in bad faith by abusing its discretion and purposefully hiding that its Variable Rates would never be based on market conditions – vital information that is material to the Plaintiff and the Putative Class Members' decisions to enroll in and remain enrolled in Verde's plans – to ensure that the Plaintiff and Putative Class Members continued to perform

under the contract even though the defendant knew its Variable Rates would never be based on the agreed upon market conditions.

140.    In fact, Verde's rates varied from the competition significantly and did not react to other indicators of market conditions.  As such, Verde charged Plaintiff and the Putative Class commercially unreasonable rates and in doing so acted in bad faith or with improve motive.

141.    Plaintiff and the class have been damaged by Verde's breach of the covenant of good faith in an amount to be determined at the trial of this action.

**COUNT IV**

**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class,**
**In the Alternative to Count II)**

142.    Plaintiff repeats and realleges the preceding and subsequent paragraphs as though set forth herein.

143.    If the Court finds no contract existed between Plaintiff and Defendant, Plaintiff brings this claim for unjust enrichment on behalf of herself and the Class.

144.    Verde has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein to the detriment of Plaintiff and the Class.

145.    Verde has been enriched by a benefit in the form of payment of exorbitant Variable Rates.

146.    Verde's enrichment was at the expense of Plaintiff and the Class.

147.    It would be unjust to allow Verde to retain the benefit.

148.    Plaintiff and the Class are entitled to disgorgement and restitution of all wrongfully obtained gains received by Verde as a result of its wrongful conduct alleged herein.

149.    Plaintiff and members of the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

A.      Certifying this matter as a class action for money damages pursuant to Fed. R. Civ. P. 23(b)(3);

B.      Appointing Plaintiff as class representative, and appointing Plaintiff's attorneys as class counsel;

C.      Awarding compensatory and punitive damages in favor of Plaintiff and the other Class Members against Defendant for all damages sustained as a result of Defendant's wrongdoing in an amount to be determined at trial;

D.      Awarding Plaintiff and the Class Members actual damages, compensatory damages and treble damages pursuant to Chapter 93A *et seq.*;

E.      Awarding Plaintiff and the Class their reasonable attorneys' fees and costs pursuant to the Chapter 93A *et seq.*;

F.      Awarding pre-judgment and post-judgment interest and costs of suit; and

G.      Awarding any and all other relief that this Court may deem to be just and practicable.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

Dated: July 15, 2019

Respectfully Submitted By:

**BLOCK & LEVITON LLP**

_____

Jeffrey C. Block
Jason M. Leviton
Nathaniel Silver
155 Federal Street, Suite 400
Boston, MA 02110
T:  617-398-5600
F:  617-5076020
jeff@blockesq.com
Jason@blockesq.com
Nate@blockesq.com

Jonathan Shub*
Kevin Laukaitis*
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA  19103-7225
T:  215-238-1700
F:  215-238-1968
jshub@kohnswift.com
klaukaitis@kohnswift.com

Daniel K. Bryson*
Harper T. Segui
**Whitfield Bryson & Mason, LLP**
900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
dan@wbmllp.com
harper@wbmllp.com

Gregory F. Coleman*
Lisa A. White*
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street. Suite 1100
Knoxville, TN 37929
T: (865) 247-0090
F: (865) 522-0049
greg@gregcolemanlaw.com
Lisa@gregcolemanlaw.com

Jason T. Brown*
**JTB LAW GROUP, LLC**
155 2nd Street, Suite 4
Jersey City, NJ 07302
T: (201) 630-0000
F: (855) 582-5297
jtb@jtblawgroup.com

*Admitted or Applying to be
Admitted *Pro Hac Vice*

*Attorneys for Plaintiff and
the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*/s/ Jeffrey C. Block*
Jeffrey C. Block
